IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE MACKEY THOMAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 18-1202 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## OPINION AND ORDER

## Synopsis

Plaintiff Michelle Mackey Thomas ("Thomas") seeks judicial review of the Social Security Administration's denial of her claim for a period of disability and disability insurance benefits ("DIB").[1] Thomas alleges a disability onset date of April 5, 2015. (R. 15) The ALJ denied her claim following a hearing at which both Thomas and a vocational expert ("VE") appeared and testified.[2] Thomas then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 10 and 13. For the reasons set forth below, the ALJ's decision is affirmed.

## Opinion

1. Standard of Review

---

[1] The ALJ determined that Thomas meets the insured status requirements of the Social Security Act through December 31, 2019. (R. 17).

[2] Thomas and the VE appeared at the hearing and the ALJ presided over the hearing from St. Louis, Missouri. (R. 15)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002)*. Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995

(1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. The ALJ's Decision

As stated above, the ALJ denied Thomas's claim for benefits. More specifically, at step one, the ALJ found that Thomas has not engaged in substantial gainful activity since the alleged onset date. (R. 17) At step two, the ALJ concluded that Thomas suffers from the following severe impairments: status-post brain meningioma and following surgeries. (R. 17-18) At step three, the ALJ concluded that Thomas does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.18) Between steps three and four, the ALJ found that Thomas has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 18-20) At step four, the ALJ found that Thomas is unable to perform past relevant work. (R. 20) At the fifth step of the analysis, the ALJ concluded that, considering Thomas's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 21-22)

## III. Discussion

Thomas presents several issues on appeal. She challenges the ALJ's formulation of the RFC. She also challenges the ALJ's identification of "severe impairments." Thomas takes issue with the ALJ's formulation of hypothetical questions and his reliance upon the VE's responses thereto. Finally, she contends that the ALJ's decision is not supported by substantial evidence of record because the VE failed to identify a sufficiently significant number of available jobs in the regional economy. For the reasons set forth below, I reject each contention.

1.  *Severe Impairment*

Thomas's challenge to the ALJ's conclusions at the second step of the analysis lacks merit. Thomas faults the ALJ for failing to recognize dysarthria and aphasia as severe impairments. The ALJ evaluated Thomas's assertions in this respect but rejected them because these impairments had been responsive to treatment, caused no more than minimal vocationally relevant limitations, were not expected to last for more than 12 months, or had not been properly diagnosed by an acceptable medical source. (R. 17) Substantial evidence supports the ALJ's decision in this regard. In short, the record is bereft of any diagnosis of cognitive difficulties or limitations. (R. 18, 62) Consequently, I find no basis for remand.

Additionally, even accepting Thomas's position as correct for purposes of argument, such an error would have been harmless because the ALJ found that Thomas did suffer from impairments which qualified as "severe." As stated above, the ALJ found that Thomas suffered from a severe impairment: status-post brain meningioma and following surgeries. (R. 17) In other words, the ALJ did not end the analysis at the second step. *See Salles v. Commissioner of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007)

4

(stating that, "[b]ecause the ALJ found in Salle's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also, Roberts v. Astrue*, Civ. No. 8-625, 2009 U.S. Dist. LEXIS 91559, at * 5 (W.D. Pa. Sept. 30, 2009) (finding that, "[e]ven assuming that the ALJ failed to include all of the Plaintiff's severe impairments at step two, this would be harmless error, as the ALJ did not make his disability determination at this step. Indeed, remand would not affect the outcome of this case and is not warranted."); and *Bliss v. Astrue*, Civ. No. 8-980, 2009 WL 413757 (W.D. Pa. Feb. 18, 2009) (stating that, "as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe…. Since Plaintiff's claim was not denied at step two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's neuropathy and sleep apnea to be non-severe."). According, any alleged error was harmless and Thomas's contentions are rejected.

### 2. *Residual Functional Capacity Assessment*

A claimant's RFC consists of "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 20010), *quoting Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The ALJ may not reject a physician's findings unless she first weights the findings against other relevant evidence and explains why certain evidence has been accepted and

other evidence rejected." *Scandone v. Astrue*, Civ. No. 05-4833, 2011 WL 3652476, at * 7 (E.D. Pa. Aug. 18, 2011). Yet "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant weight." *Wilkinson v. Comm'r. of Soc. Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014). An ALJ is not required to reference every tidbit of evidence. *See Hur v. Barnhart*, 94 Fed. Appx. 130, at * 2 (3d Cir. April 16, 2004) (stating that "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Frazier v. Colvin*, Civ. No., 13-3742, 2015 WL 4481248, at * 8 (E.D. Pa. June 30, 2015). This is particularly so when the rejected evidence "suggests a contrary disposition." *Bonani v. Astrue*, Civ. No. 10-0329, 2010 WL 5481551, at * 5 (W.D. Pa. Oct. 15, 2010). In making an RFC assessment, the "ALJ must describe how the evidence supports his conclusion and explain why certain limitations are not accepted as consistent with the medical or other evidence." *Noah v. Astrue*, Civ. No. 12-091, 2013 WL 364235, at * 2 (W.D. Pa. Jan. 30, 2013), *citing, Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

In light of this standard, I reject Thomas's contentions that the RFC is inadequate. She contends that the RFC should have made allowances for limitations associated with peripheral vision, difficulty with her right hand, right leg weakness, and problems with speech and memory. Yet, Thomas has not identified a single medical provider who tendered an opinion indicating that she was limited in these respects. There is no "conflict." At most, Thomas points to records in which providers recorded Thomas's complaints of limitations. The ALJ acknowledged these complaints. (R. 19, commenting

6

that "[t]he claimant stated that her eye doctor told her not to drive because of peripheral vision problems." (R. 19) Further, the ALJ explained that Thomas's statements were not entirely consistent with the medical evidence. (R. 19) "With regard to vision," the ALJ explained, the records indicated only that Thomas suffered from "double vision without glasses, indicating that this is controlled with glasses." (R. 20), *citing*, Ex. 7F/1. Consequently, the RFC is supported by substantial evidence of record and there is no basis for remand.

### 3. Hypothetical Questions

Thomas also complains that the hypothetical questions did not accurately reflect her inability to work on a regular and continuous basis. *See* ECF Docket No. 11, p. 8-10. Thomas points to her testimony regarding having "good and bad days" and headaches at least once a week which last all day, as evidence of her inability to work. As the Third Circuit Court of Appeals has explained, "[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by the claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Hypotheticals need only accurately portray all of a claimant's "credible established limitations." *Rutherford,* 399 F.3d at 554, *citing, Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).  Thus, even if an ALJ posed a hypothetical to the VE which set forth the limitations Thomas is referencing, the ALJ need not adopt the VE's answer. "Simply because a hypothetical was posed, does not mean that there was sufficient evidence to support it; the ALJ ultimately relies upon only credible, medically established limitations." *Menuto v. Astrue*, Civ. No. 11-264, 2012 WL 2594339, at * 9 (W.D. Pa. June 13, 2012) (citations omitted). Here, the ALJ

appropriately relied on the VE's answer to the hypothetical question posed which accurately reflected Thomas's impairments. Consequently, there is no basis for remand.

    4.  Number of Regional Jobs

At the fifth step of the sequential analysis, the Commissioner determines whether there is work in the national economy available for the claimant. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). Thomas contends that the ALJ erred in relying upon the VE's testimony regarding the number of jobs available because the testimony focused solely upon national jobs rather than regional jobs. I agree with my colleague that Thomas's focus upon regional jobs is misplaced. In *Brininger v. Berryhill*, Civ. No. 16-903, 2017 WL 3634187, * 13 (M.D. Pa. Aug. 7, 2017), the court noted that "the question is whether there is work in the national economy that she can do." (citations omitted). *See also, Raymond v. Astrue*, 621 F.3 1269, 1274 (10th Cir. 2009) (rejecting claimant's contention that significant numbers of prospective jobs must exist in the regional economy, stating that "the controlling statutes, federal regulations, and case law indicate that the proper focus generally must be on jobs in the national, not regional, economy."). The regulations provide that:

> [w]e consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether
>     (1) Work exists in the immediate area in which you live;
>     (2) A specific job vacancy exists for you; or
>     (3) You would be hired if you applied for work.

20 C.F.R. § 416.966(a). "Isolated jobs that exist only in very limited numbers in relatively few locations outside the region" where the claimant lives "are not considered work which exists in the national economy." 20 C.F.R. § 416.966(b). Yet there is nothing in the nature of the job of usher or counter clerk that suggests these jobs are isolated to only a few locations. *See Brininger*, 2017 WL 3634187, at * 14, *quoting, Brun v. Barnhart,* Civ. No. 3-44-B.W., 2004 WL 1572695, at * 1 (D. Me. Apr. 5, 2004), *aff'd*, 126 Fed. Appx. 495 (1st Cir. 2005) (stating that "[t]here is nothing in the nature of the job at issue, surveillance monitor, that suggests that these jobs exist only in a few locations."). Further, I find that the number of jobs at issue – 17,500 – is sufficiently large such that it can be inferred that these jobs are not only available in isolated regions of the country." *Brininger*, 2017 WL 3634187, at * 14. "Moreover, given that the definition of work in the national economy is 'work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country,' 42 U.S.C. § 1382c(a)(3)(B), testimony 'stating that there are a number of jobs available in the national economy is, by definition, stating the incidence of jobs in the region in which the individual resides or in several regions in the country.'" *Id.*, at * 15, *quoting, Vititoe v. Colvin*, 549 Fed. Appx. 723, 731 (10th Cir. 2013). *See also Sanchez v. Commissioner of Soc. Sec.*, 705 Fed. Appx. 95, 98-99 (3d Cir. 2017) (finding that 18,000 jobs were sufficiently "significant" to support the ALJ's decision), *citing, Johnson v. Chater*, 108 F.3d 178, 180 (finding that 10,000 jobs in the national economy was sufficiently significant).[3]

---

[3] Thomas cites to my previous decision in *Wehrer v. Commissioner of Soc. Sec.*, Civ. No. 17-804, 2018 WL 2065926 (W.D. Pa. May 3, 2018) in support of her contention that a VE must identify the number of regional jobs available for a claimant. *See* ECF Docket No. 11, p. 10-11. I find *Wehrer* to be distinguishable. In that case, the issue before me was whether the ALJ appropriately relied on VE testimony that "over 5,000" jobs were available in the "economy" in finding that jobs existed in significant numbers which the claimant could perform. In concluding that the ALJ did not, I noted that the ALJ had not identified the precise number of jobs and had not indicated that "over 5,000" jobs were available in the regional economy. As stated above, work exists in the national economy

where it exists in significant numbers *either* in the region where the claimant lives or in several regions of the country. Unprepared to hold that 5,000 jobs existing in "several regions of the country" satisfied that standard, and unable to find that 5,000 jobs existed in the region in which the claimant lived, the case was remanded. Further, I specifically declined to hold that 10,000 could never be a sufficient number. Here, the number of jobs is well above the 10,000-job threshold.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE MACKEY THOMAS | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 18-1202 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 15th day of August, 2019, it is hereby ORDERED that the

Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED and the

Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED. It is further

ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed"

forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge